COMMONWEALTH of Pennsylvania, Appellee

v.

Charles A. ORTEGA, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 26, 2010.
Filed May 17, 2010.

---

5. Due to the manner in which we dispose of Appellant's first issue, we need not address the merits of her other two issues.

John P. Cotter, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: STEVENS, MUNDY, JJ., and McEWEN, P.J.E.

OPINION BY STEVENS, J.:

¶ 1 Appellant, Charles Ortega ("Ortega"), appeals from the judgment of sentence of 2½ to 8 years' imprisonment entered in the Court of Common Pleas of Philadelphia County after the court revoked his probationary sentence upon finding he had violated conditions of probation. Ortega raises several claims of error in which he argues that he was no longer on probation at the time of his alleged misconduct, that evidence was insufficient to prove the alleged misconduct, and that imposition of the revocation sentence violated his rights under the Double Jeopardy Clause of the Fifth Amendment because separate charges based on the alleged misconduct had earlier been dismissed. We affirm.

¶ 2 The transcript of Ortega's Violation of Probation ("VOP") hearing of September 26, 2008 indicates that, on January 13, 2004, a then eighteen year old Ortega entered into a negotiated guilty plea for Pos-

session With the Intent to Deliver heroin and crack cocaine and was sentenced to a mitigated range guideline sentence of 5 to 23 months' incarceration to be followed by two years' reporting probation. Paroled on March 12, 2004, Ortega began reporting probation until, on May 4, 2004, he failed to report to his probation officer. Consequently, on September 13, 2004, wanted cards were issued for Ortega's arrest. N.T. 9/26/08 at 4–8.

¶ 3 Three and one-half years would pass before Ortega resurfaced. On December 14, 2007, a uniformed police officer with the Philadelphia Police Department apprehended Ortega for suspicion of drug possession and repeatedly supplying a false name during the narcotics investigation. N.T. 9/26/08 at 13. The officer placed Ortega in the back seat of the patrol car but did not handcuff him, as Ortega was using crutches because of a broken femur. N.T. at 15.

¶ 4 While *en route* to the police station, the officer overheard Ortega on his cell phone telling someone the current location of the patrol car. N.T. at 15–16. Ortega ignored the officer's order to end the call and, after the officer repeated the order, began banging on the car's interior partition and screamed "fuck you, pussy" at the officer. N.T. at 16. When the officer pulled over and opened the back door to confiscate the phone, Ortega first kicked the door and then delivered another kick that glanced off the officer's arm and hit him in the chest. N.T. at 17. At that moment, the officer flagged down a nearby police wagon and received assistance from two officers. N.T. at 17. Together, they managed to handcuff the uncooperative

Ortega after employing pepper spray and informed him he was being arrested for assaulting an officer. N.T. at 17.

¶ 5 At Ortega's VOP hearing, the Commonwealth sought revocation of Ortega's probation and a sentence of incarceration for both technical violations of probation by absconding and his conduct toward his arresting officer. N.T. at 3. To establish technical violations, Ortega's probation officer testified that Ortega absconded two months after he was paroled, never reported, and never made any payments. N.T. at 3. It was the probation officer's recommendation that Ortega be incarcerated due to these technical violations. N.T. at 3.

¶ 6 Before the Commonwealth proceeded with the "Daisy Kates" portion of the hearing,[1] in which the arresting police officer would testify regarding the alleged assault, defense counsel raised a two-pronged objection to admission of his testimony. First, the testimony would be irrelevant because Ortega's two year term of probation expired prior to his December 14, 2007 arrest. Second, because the court had already dismissed the underlying charges of assault, it would be improper to base probation revocation on such evidence.

¶ 7 The Commonwealth contested the first argument on grounds that the term of probation remains open and continuing until a probationer actually serves the entire term. To rule otherwise would be to confer a benefit upon a probationer for absconding from supervision and liberating himself from all the conditions of his probation. The second argument also fails, the Commonwealth argued, for while a preliminary hearing saw the court down-

---

1. When the basis for revocation arises from evidence of intervening criminal conduct, a VOP hearing may be held prior to any trial arising from such criminal conduct. *See Commonwealth v. Kates*, 452 Pa. 102, 305 A.2d 701 (1973) (no statutory or constitutional bar to holding VOP hearing prior to trial for criminal charges based on same activities which gave rise to alleged probation violation).

grade the charges from aggravated assault to simple assault based on the merits, the court had bound the simple assault charge for trial. It was only thereafter, where the Commonwealth failed to secure a Standard Philadelphia Police Incident Report (Form 75–48), that the court dismissed the charges outright.

¶ 8 The court ruled that the absconder Ortega was still subject to an open sentence of probation at the time of the alleged assault, making the officer's testimony regarding Ortega's conduct while on probation relevant to the VOP proceedings. At the conclusion of testimony, the court deferred sentencing until it had the opportunity to review a presentence investigation report.

¶ 9 At the November 5, 2008 sentencing hearing, the court considered argument by respective counsel and stated the following reasons for its sentence:

> **THE COURT:** Well, one of the things that concerns me was not just your behavior with the police officers, who have a difficult enough job to do that they should be assaulted when they are trying to do what they are obligated to do, protect the citizens of Philadelphia, but the fact that you were on my probation and you disappeared is of some concern to me. You just didn't fulfill the terms of your probation, which means you are not a good candidate for that, certainly.
>
> Is there anything else you want to tell me?
>
> **DEFENDANT:** No, Your Honor.
>
> **THE COURT:** All right. For violating the terms of my probation, for absconding, for committing what I believe to be illegal behavior and this interaction with the police officers, which was the subject of that Daisy Kates hearing, I am going to sentence Mr. Ortega to serve not less than two and a half, no more than eight years, and that sentence will be served

consecutive to the sentence that has been imposed by Judge Bright [for an unrelated drug offense].

> There will also be a $500 fine on that sentence, PWID, and this PWID, if the record isn't clear, that was a heroin case, so that carries a possible maximum sentence of 15 years. I don't think Mr. Ortega needs to be warehoused, but I think he needs to understand that one cannot assault police officers and expect not to suffer the consequences of that action, at least in this courtroom, and the behavior of the defendant in absconding for such a long period of time shows that I do agree with the Commonwealth's assertion that a community based sentence would not be appropriate for this defendant.

N.T. 11/5/08 at 19–20. The court thereafter denied Ortega's motion for reconsideration of sentence on November 10, 2008, and this timely appeal followed.

¶ 10 Ortega raises the following three issues on appeal:

I. WAS THE DEFENDANT ON PROBATION ON 12–14–07?

II. WAS THE EVIDENCE SUFFICIENT TO SHOW THAT THE DEFENDANT VIOLATED HIS PROBATION ON 12–14–07?

III. DID THE IMPOSITION OF A SENTENCE AT THE VIOLATION OF PROBATION (VOP) HEARING VIOLATE THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT OF THE U.S. CONSTITUTION, ALSO KNOWN AS THE DOCTRINE OF COLLATERAL ESTOPPEL WHEN APPLIED TO VOP PROCEEDINGS?

Brief for Appellant at 2.

■ ¶ 11 The scope of review in an appeal following a sentence imposed after

probation revocation is limited to the validity of the revocation proceedings and the legality of the sentence imposed following revocation. *Commonwealth v. Infante,* 585 Pa. 408, 419, 888 A.2d 783, 790 (2005). As Ortega's arguments implicate the validity of the revocation proceedings, we shall address his issues in turn.

¶ 12 As a preliminary matter, however, we must first address the Commonwealth's assertion that Ortega's appeal, which confines itself to challenging the court's consideration of his actions during arrest, is moot because the court's sentence was justifiable on technical violations alone. The extensive VOP hearing colloquy between the VOP court and defense counsel does reveal that defense counsel conceded the court possessed the authority to consider whether Ortega's absconder violation and other technical delinquencies occurring while on probation merited a revocation of probation sentence. See N.T. 9/26/08 at 9–10. It is also clear that the court determined Ortega's technical violations, serious and protracted as they were, made him unsuitable for another "community based sentence" of probation. N.T. at 20. Indeed, in light of 42 Pa. C.S.A. § 9771(c)(3),[2] we agree that the VOP court could have reasonably determined that revocation and a sentence of imprisonment for a defendant who ab-

sconded at the very outset of his probationary term and remained delinquent for three years was essential to vindicate the authority of the court. *See Commonwealth v. Carver,* 923 A.2d 495, 498 (Pa.Super.2007) (acknowledging technical violations, where flagrant and indicative of an inability to reform, can support revocation and imprisonment).

¶ 13 Nevertheless, it is apparent from the record that the court did not base its sentence exclusively on evidence of Ortega's technical violations, as the court also gave great weight to the testimony that Ortega assaulted his arresting officer on December 14, 2007. We are therefore compelled to disagree with the Commonwealth's assertion that Ortega's appeal is moot, and we shall review his challenge on the merits for purposes of determining whether remand for another revocation hearing is necessary. *See Commonwealth v. Mullins,* 591 Pa. 341, 918 A.2d 82 (2007) (holding remedy for evidentiary problem at VOP hearing is remand for new hearing).

¶ 14 Ortega first argues it was error to consider his conduct during the December 14, 2007 arrest because the scheduled expiration date of his probation had already passed. We disagree, as we find the absconder Ortega was still subject

---

**2.** Section 9771 states in pertinent part:

§ 9771. Modification or revocation of order of probation

(a) General rule.—The court may at any time terminate continued supervision or lessen or increase the conditions upon which an order of probation has been imposed.

(b) Revocation.—The court may revoke an order of probation upon proof of the violation of specified conditions of the probation. Upon revocation the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given

to the time spent serving the order of probation.

(c) Limitation on sentence of total confinement.—The court shall not impose a sentence of total confinement upon revocation unless it finds that:

(1) the defendant has been convicted of another crime; or

(2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or

(3) such a sentence is essential to vindicate the authority of the court.

42 Pa.C.S. § 9771(a), (b), (c).

on that date to a probationary sentence as extended by his ongoing delinquency.

¶ 15 While we have discovered no appellate court decision controlling the precise issue raised, and the parties point to none, we may gain instruction by way of analogy, as the courts of this Commonwealth have long rejected the notion that the sentence of an absconder or delinquent parolee continues to run, as if it were being served, to the point of expiring on its scheduled expiration date. For example, in *Young v. Com. Bd. of Probation and Parole*, 487 Pa. 428, 437, 409 A.2d 843, 848 (1979), the Pennsylvania Supreme Court held that the Board properly denied a parolee credit on his sentence for time spent on parole where his "street time" was marked with delinquency and failure to comply with conditions of parole. In reaching this decision, which the Court declared necessary lest parole be rendered "impotent as a corrective device," *Id.*, our Supreme Court relied on the following rationale employed by the Commonwealth Court in *Kuykendall v. Penna. Bd. Of Probation and Parole*, 26 Pa.Cmwlth. 234, 363 A.2d 866 (1976):

> There is no doubt that the Board can recommit and recompute the sentence of a parolee who commits a crime while on parole but is not convicted until after his original sentence would have expired. Plaintiff desires to profit from the fact that he absconded and was delinquent on the date of expiration of his original sentence, and notwithstanding the subsequent conviction, he asserts that the Board lacked 'jurisdiction' to recommit him. There is no reason why a delinquent parolee should so profit, and we reject plaintiff's arguments.

*Kuykendall*, 363 A.2d at 868.

¶ 16 Though decisions of the Commonwealth Court are not binding upon this Court, *Kuykendall* is of particular impor-

tance to the case *sub judice* because in that case the delinquent parolee's sentence had expired about five months before he was arrested on new charges. He therefore claimed the Board had no jurisdiction to recommit and recompute his original sentence because it had reached its expiration date despite his delinquency.

¶ 17 As the above quotation shows, the Commonwealth Court rejected this contention. In fact, not only did the Commonwealth Court hold that the parolee could therefore be recommitted as a technical violator, it also held that because he was "convicted of a crime committed during his parole *as extended by delinquent time*, his sentence was properly recomputed as a convicted parole violator ..." as well. *Id.* (emphasis added).

¶ 18 Here, Ortega provides no persuasive reason as to why the same rationale should not apply to avoid what would otherwise be the absurd result of crediting an absconder with having served a probationary sentence on his own terms, free from supervision and willfully indifferent to the public's interest in his rehabilitation. The one case he relies upon in this respect, *Carver, supra,* confers no benefit to him, as *Carver* held only that revocation or increase of conditions of sentence shall be based on the conduct of defendant after imposition of the probationary sentence, as provided by Section 9771(d), *supra. Carver* does not therefore address the issue of whether the probationary sentence of an absconder who remains at large may ever expire.

¶ 19 Consistent with established decisional law refusing to reward an at-large absconder with the expiration of a sentence whose conditions remained unfulfilled, we hold that absconder Ortega was still subject to a sentence of probation as extended by delinquent time when he allegedly assaulted his arresting officer.

Consequently, the court committed no error when it considered the alleged offense at the VOP proceedings.

¶ 20 In his second issue, Ortega argues that the Commonwealth offered insufficient evidence of a probation violation, as the arresting officer's testimony established neither a lawful arrest of Ortega or bodily injury from Ortega's kick, each fact critical to proving a necessary element to the open charges of resisting arrest and simple assault, respectively, that he faced. With this argument, however, Ortega misconstrues the Commonwealth's burden of proof in establishing a probation violation.

> [T]he reason for revocation of probation need not necessarily be the commission of or conviction for subsequent criminal conduct. Rather, this Court has repeatedly acknowledged the very broad standard that sentencing courts must use in determining whether probation has been violated:
>
>> A probation violation is established whenever it is shown that the conduct of the probationer indicates the probation has proven to have been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future antisocial conduct.
>
> [Commonwealth v.] Brown [503 Pa. 514], 469 A.2d [1371] at 1376 [ (1983) ] (citing [ ] Kates, [supra]; and Commonwealth v. Burrell, 497 Pa. 367, 441 A.2d 744 (1982)).

Commonwealth v. Infante, 585 Pa. 408, 421, 888 A.2d 783, 791 (2005). Moreover, the Commonwealth need only make this showing by a preponderance of the evidence.[3] Commonwealth v. A.R. 990 A.2d 1 (Pa.Super.2010).

¶ 21 The question before us, therefore, is not whether the evidence admitted at the VOP hearing would, if admitted at trial, suffice to convict Ortega beyond a reasonable doubt of resisting arrest and simple assault, but whether it showed by a preponderance of the evidence that probation had proven ineffective at rehabilitating Ortega and deterring him from antisocial behavior. In addressing this question, the Commonwealth proffered testimony from the arresting officer that Ortega had ignored repeated orders to turn off his cell phone in the patrol car, began banging on the partition behind the officer's head while screaming expletives at him, kicked the rear passenger door into the officer when it was opened, and landed another kick to the officer's arm and chest before the phone was forcibly removed from his grip. Moreover, the officer testified that pepper spray was required to subdue Ortega after three officers working together could not successfully handcuff him. The VOP court found this testimony credible, and there is nothing in the record to disturb this credibility determination.

¶ 22 In light of both this testimony and that of the probation officer who established the protracted fugitive status of Ortega, the evidence was sufficient to support the revocation sentence imposed by the court. Ortega's second issue thus fails.

¶ 23 Finally, Ortega claims that permitting testimony of his arrest at the VOP hearing, after judges had already dismissed the charge of aggravated assault on the merits and later dismissed remaining charges for lack of prosecution, violated his right to be free from double jeopardy and offended the collateral estoppel rule. We disagree.

---

**3.** The "preponderance of the evidence" is the lowest burden of proof in the administration of justice, and it is defined as the greater weight of the evidence, i.e., to tip a scale slightly in one's favor. *Id.*

"The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution protects an individual against successive punishments and successive prosecutions for the same criminal offense." *Commonwealth v. Szebin*, 785 A.2d 103, 104 (Pa.Super.2001), *appeal denied*, 568 Pa. 699, 796 A.2d 982 (2002). "[A]t the heart of double jeopardy jurisprudence is the requirement that an individual demonstrate ... he ... has been subjected to the risk of a trial on the merits." *Commonwealth v. Hunter*, [ ] 674 A.2d 306, 307 (Pa.Super.1996), *appeal dismissed as improvidently granted*, 549 Pa. 571, 701 A.2d 1356 (1997).

"In Pennsylvania, jeopardy does not attach and the constitutional prohibition against double jeopardy has no application until a defendant stands before a tribunal where guilt or innocence will be determined." *Id.* "In a criminal jury trial, jeopardy attaches when the jury is sworn. In a bench trial, however, jeopardy attaches when the trial court begins to hear the evidence." *Commonwealth v. Micklos*, [ ] 672 A.2d 796, 799 (Pa.Super.1996), *appeal denied*, 546 Pa. 678, 686 A.2d 1309 (1996) (internal citation omitted).

*Commonwealth v. Vargas*, 947 A.2d 777, 780–781 (Pa.Super.2008). Furthermore:

With respect to the criminal law defendant, collateral estoppel is treated as a subpart of double jeopardy protection and is defined as follows: "Collateral estoppel ... does not automatically bar subsequent prosecutions[,] but does bar redetermination in a second prosecution of those issues necessarily determined between the parties in a first proceeding which has become a final judgment." *Commonwealth v. Smith*, 518 Pa. 15, 540 A.2d 246, 251 (1988) (citation omitted).

*Commonwealth v. States*, 595 Pa. 453, 458, 938 A.2d 1016, 1020 (2007)

 ¶ 24 Here, it is undisputed that the charges of simple assault and resisting arrest were dismissed preliminarily, before a jury was empanelled or a trial court sitting as finder of fact began to hear evidence. As the prior criminal proceeding therefore never determined the issues arising from the December 14, 2007 arrest of Ortega, there was no redetermination of such issues at the VOP hearing in violation of double jeopardy protections or the rule of collateral estoppel. Accordingly, Ortega's final claim fails.

¶ 25 Judgment of sentence is affirmed.